O’NIELL, C. J.
 

 (dissenting). Stewart v. Paulding, 7 La. 506, and Duncan v. Armant, 3 La. Ann. 84, are. not precedents for the decision proposed to be rendered in this ease. They are not authority for the proposition that article 2611 of the Civil Code means that 10 days’ advertisement will suffice for a sale of real estate, a la folie enchere.
 

 Stewart v. Paulding was a jury case. The district judge’s charge to the jury, as to the meaning of article 2611 (then 2589), was not correct, but that is not the reason why the Supreme Court refused to set aside the verdict. The reason was, first, that the judge had “stated the law in the way most favorable to the defendant,” and, second, that the defendant had not “made any attempt to have the verdict set aside.” Here is what Justice Martin said, after quoting the dis^ trict judge’s charge, viz.:
 

 “As this case is presented, it does not appear to this court, that the defendant has cause, or any right to complain of any part of the charge of the judge a quo, to the jury. He seems to have stated the law in the way most favorable to the defendant.
 

 “* * * The jury were satisfied as to the facts, and the court expressed its approval of the verdict, by conforming its judgment thereto, without any attempt on the part of the defendant, to have the verdict set aside.”
 

 The only defense, made in Stewart v. Paulding was “that the plaintiff could not make him [the defendant] a good title to the property bid in by him, within 10 days after the adjudication, in consequence of which the sale became null and void.” It does not appear in the statement of the case, or in the opinion, that the property was advertised for a period less than 30 days, or that the defendant urged any such defense, if it was true. With regard to the merits of the case, Justice Martin said:
 

 “On the merits, it is shown that the defendant declared himself unwilling to comply with the terms and conditions of the first adjudication, on the most frivolous grounds, • viz.: That he was about making a trip to the northward. The only doubt that may, arise in his favor,
 
 relates to the question of foot, whether the advertisements were duly made amd published.”
 
 (The italics are mine.)
 

 The syllabus of the ruling in Stewart v. Paulding is not appropriate to the facts or to the decision itself.
 

 In Duncan v. Armant, 3 La. Ann. 84, the sale a la folie enchere was advertised for 32 days. There was no complaint about that. The only complaint was that the advertisement of the second sale was not. commenced “within 10 days” after the first sale. Justice Rost evidently did not catch the point, for he went on to say that 10 days’ advertisement would have been sufficient for the sale a la folie enchere, which was pure, unalloyed,
 
 *343
 
 and unadulterated obiter, dictum. The fact was that, after 10 days had gone by, after the first adjudication, the plaintiff took a rule upon the defendant to show cause why he should not comply with his bid, and, the rule having been made absolute, readvortised the property for sale for more than 30 days. In defense of the suit to recover the deficiency, the defendant complained that the 30 days’ publication of the second sale, a la folie -enchere, should have commenced within 10 days after the first adjudication. A sufficient answer on the part of the court would have been that the Code provided that the readvertisement or new publication should commence, not within 10 days, but “at the end of 10 days.”
 

 In order to leave no doubt about this, I quote from Justice Root’s decision, viz.:
 

 “The defendant resists the demand upon three grounds: (1) That no order of the probate court was obtained for the resale of the slaves, which being succession property, could not be sold, unless the executor was expressly authorized by the court. (2) That the proceeding a la folie enchere' canhot be pursued within an unlimited or an arbitrary undetermined period, but should be begun Within ten days. (3) That the second sale did not take place after the customary legal advertisements. The district court sustained the last ground of defence, and the plaintiff has appealed from the judgment rendered against him.”
 

 It is explained in the opinion that the defendant’s third complaint, “that the second sale did not take place after the customary legal advertisements,” seems to have meant that the publication should have been for only 10 days instead of 30 days, or that the .publication should have commenced within the 10 days. Here is what Justice Rost said, in explanation (page 85), viz.:
 

 “If some delay occurred in this ease between the first and second sale, no negligence can be charged to the plaintiff. A few days after the sale, he took a rule upon the defendant to show cause why he should not comply with the terms and conditions of the sale, and why a writ of distringas should not issue to compel him thereto. On the trial of the rule, the defendant showed no cause, the rule was made absolute, and a writ of distringas was issued. When the writ was returned no property found, the plaintiff advertised the slaves to be sold at the risk of the defendant. It is true they were advertised for thirty-two days, when they might have been sold at the expiration of ten. days; but this is not a cause of nullity. The law clearly means ten days or more. The sale was made in good faith. The advertisements were sufficient, and.no injury is shown to have resulted to the defendant from the delay.”
 

 Article 2611 of the Civil Code appeared as. article. 2580 in the Code of -1825. It was copied literally in the revision of 1870. The French text shows that the expression “after the customary notices” is a loose and faulty translation. It should read “after the usual publications.” The French text reads: “Le vendeur peut, au bout de dix jours, et aprés les publications d’usage, remettre en vente publique la chose qui avait été adjugée,” etc. The precise translation of which is: “The seller may, at the end of 10 days, and after the usual publications, reoffer at public sale,” etc. It is certain that the expression, “at the end of 10 days,” au bout de dix jours, cannot mean “after 10 days’ publication,” because the words are followed immediately by the expression, “and after the usual publications,” et aprés les publications d’usage. / '
 

 As Justice ST. PAUL says, “les publications d’usage”'are 10 days for movables and 30 days for immovables. Therefore the French text says, literally, that the seller may, at the end of 10 days, and after 10 days’ publication, if the property be movable, or 30 days if it be immovable, reoffer at public sale, etc. There is nothing ambiguous in the French text. We have no right to transpose or convert the language “au bout de dix jours” into the expression “after 10 days’ publication,” merely because the translators of the French expression “aprés les publications d’usage” loosely translated it into “after the customary notices.” It is only because of
 
 *345
 
 that inaccurate translation, that it is argued now that the article of the Code has a meaning which we are certain the writers of the French text, or the translators, did not intend it should have.
 

 Why should'we say that “aprés les publications d’usage” means “after 10 days’ publication,” whether for movable or immovable property, when we know that -the usual publication for immovable property is 30 days? There is no other instance in our law where 10 days’ publication,is deemed sufficient for a public sale of real estate. There was no reason for the lawmaker to make an exception with regard to a sale a la folie enchere. That the first publication for 30 days is abortive is no reason for making the second publication for only 10 days.
 

 Of course, if the lawmaker had said that a sale a la folie enchere, whether of movable or immovable property, should be preceded by only 10 days’ publication, we would have nothing to do with the unreasonableness of the rule, or exception to the rule. But, if the lawmaker had intended to say that a sale a la folie enchere, whether of movable or immovable property, should be preceded by only 10 days’ publication, the lawmaker would not have said: “Le vendeur peut, au bout de dix jours, et aprés les publications d’usage, remettre en vente publique la chose,” etc. He would have said: “Le vendeur peut, aprés les publications pendant dix jours, remettre en vente publique la chose,” etc. Why say, “at the end of 10 days, and after the usual, publications,” if the intention was to say “after 10 days’ publication?”
 

 Justice ST. PAUL asks, How can it be argued that the adjudicatee, at an auction sale of real estate, for cash, has 10 days in which to pay the price, during which time the seller cannot. begin the usual publications, “les publications d’usage,” for a sale a la folie enchere? Article 2610 of the Civil Code answers the question, viz.:
 

 “If the object adjudged is an immovable for which the law requires that the act of sale shall be passed in writing, the purchaser may retain the price, and the seller the possession of the thing, until the act be passed.
 

 “This act ought to be passed within twenty-four hours after the adjudication,
 
 if one of the parties require it; he who occasions a fwther delay is responsible to the other in damages.”
 
 (The italics are mine.)
 

 Then follows article 2611, saying that, if the adjudicatee has defaulted in the payment of the price, the seller may, at the end of 10 days, and after the usual publications, re-ofter the property at public sale, at the risk of the adjudicatee who has defaulted. But that is not the only right or remedy of the seller in such case. Article 2608 of the Code declares, with regard to an adjudication at public auction, “the contract is from that time subject to the samé rules'which govern the ordinary contract of sale.” And in Lalaurie v. Cahallen, 2 La. 401, it was observed that the right of the seller, in such case, to proceed by sale a la folie enchere, under article 2611 (old article 2589), was not his only right or remedy. It was said:
 

 “When the last bidder does not comply with the terms of sale, the law authorizes the property to be put up again for sale; -bpt it does not make it the duty of the vendor to do so, and loaves him at liberty to pursue all other legal remedies.”
 

 It has been suggested that the expression in article 2611 of the Code, “and after the customary notices,” might mean “and after service of 'the, notice of seizure, notice to appoint appraisers,” etc. The possibility that that is the,meaning is what has caused the doubt as to whether a sale of real estate a la folie enchere -may -be made without the usual advertisement ,or publication for 30 days. But when we read the original text we find that “customary notices” means “usual publications.” If the redactors of the Code of 1870 had changed
 
 the
 
 language, in copying article 2589 of the Code of 1825, the language of the revised Code would have to
 
 *347
 
 prevail over that of the Code of 1825, according to the statute of 1870 amending and reenacting ’the Code. But it is well settled that the French text of the Code of 1825 must prevail over the English translation, wherever the translation is not literal or accurate. Therefore, if the language “customary notices” does not mean “usual publications,” the French text, which says “publications d’usage,” must prevail.
 

 If this court had deliberately decided, in Stewart v. Paulding, or in Duncan v. Armant, that “aprés les publications d’usage” meant “after 10 days’ publication,” whether for movables or immovables, we might be justified in perpetuating the error. But it was not so decided in Stewart v. Paulding; and the learned author of the opinion in Duncan v. Armant was mistaken when he said it had been so decided. His statement to that effect was not at all pertinent to the decision of Duncan v. Armant. Therefore, if we say now that “aprfis les publications d’usage” means “after 10 days’ publication,” whether for movable or immovable property, we are not merely repeating but making the error.
 

 Which T respectfully decline to subscribe to.